IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

BENJAMIN K. MAPP,                  )
                                   )
            Plaintiff,             )
                                   )
     v.                            )     CASE NO. 3:08-CV-695-WKW [WO]
                                   )
DEUTSCHE BANK NATIONAL             )
TRUST COMPANY, *et al.*,           )
                                   )
            Defendants.            )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Benjamin K. Mapp ("Mapp") has filed a motion (Doc. # 20) asking the court

to reconsider its opinion (Doc. # 12) denying his motion to remand this case to state court or,

in the alternative, to certify the denial of remand for interlocutory appeal pursuant to 28

U.S.C. § 1292(b).  A response in opposition was filed by Defendant Deutsche Bank National

Trust Company ("Deutsche Bank") (Doc. # 23), to which Mapp filed a reply (Doc. # 24).[1]

For the reasons to follow, the motion for reconsideration is due to be denied, and the motion

for certification is due to be granted.

## I.  STANDARD OF REVIEW

A district court has broad discretion to reconsider an interlocutory order.  *See Toole*

*v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000); *see also United States v.*

*Acosta*, 669 F.2d 292, 293 (5th Cir. Unit B 1982) ("[T]he district court has broad power to

---

[1] Mapp also has requested oral argument.  (Doc. # 20.)  Because the court finds that the briefs are
adequate and that oral argument will not materially aid in the resolution of the motion to reconsider, the
request for oral argument is denied.

reconsider the correctness of its interlocutory rulings.")[2]  It may reconsider an interlocutory

ruling "for any reason it deems sufficient."  *Canaday v. Household Retail Servs., Inc.*, 119

F. Supp. 2d 1258, 1260 (M.D. Ala. 2000), *aff'd sub nom. Perry v. Household Retail*, 268

F.3d 1067 (11th Cir. 2001).

## II.  BACKGROUND

Mapp originally filed this lawsuit in the Circuit Court of Chambers County, Alabama,

against Deutsche Bank and GSPRM Loan Trust 2006-1 (collectively "Defendants").  In his

complaint, Mapp claims that Defendants negligently, wantonly, and otherwise wrongfully

attempted to foreclose on the mortgage on his home.  He seeks unspecified compensatory and

punitive damages, as well as injunctive relief preventing foreclosure.  Deutsche Bank timely

removed the action on the basis of diversity jurisdiction.  Mapp moved to remand the case

to state court.  That motion was denied.

## III.  DISCUSSION

The sole issue presently is the amount in controversy.  Mapp insists that the amount

in controversy is his equity in the real estate.  From Mapp's perspective, after subtracting the

mortgage debt and other liens (about $113,500) from the value of the real estate (about

$125,700), the value of the equity in his home is approximately $12,000, an amount well

below the jurisdictional amount.  (Doc. # 20, at 4.)  However, in previously denying the

motion to remand, this court found that the amount in controversy was the value of the real

---

[2] Decisions of Unit B of the former Fifth Circuit are binding precedent in this circuit.  *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

estate, at least $120,500, as established unambiguously by the note and mortgage, copies of which were included in the removal documents.  (Doc. # 12, at 7.)

Other federal courts in Alabama, including three judges in this district, have taken one of four approaches to establish the amount in controversy in claims involving wrongful foreclosures: either (1) the value of the property; (2) the amount of the mortgage (*i.e.*, the balance due on the promissory note secured by the mortgage); (3) the value of a temporary delay of a foreclosure; or (4) a plaintiff's equity in the real estate subject to foreclosure.  *See Wood v. Option One Mortgage Corp.*, 580 F. Supp. 2d 1248, 1252 (N.D. Ala. 2008) (Hopkins, J.) (finding that allegation in complaint referencing the amount of the mortgage in a wrongful foreclosure case is not sufficient to establish jurisdictional amount); *Horace v. Lasalle Bank Nat'l Ass'n*, No. 08-1019, 2009 WL 426467, at *1-2 (M.D. Ala. Feb. 17, 2009) (Thompson, J.) (same); *James v. U.S. Bank Nat'l Assoc.,* No. 09-247, 2009 WL 2170045, at *2 (M.D. Ala. July 17, 2009) (Thompson, J.) (finding that the amount in controversy is not the value of the property but rather the value of a temporary delay of a foreclosure); *Carstarphen v. Deutsche Bank Nat'l Trust Co.*, No. 08-0511, 2009 WL 1537861, at *4-5 (S.D. Ala. June 1, 2009) (Steele, J.) (same); *Sanders v. Homecomings Fin. LLC*, No. 08-369, 2009 WL 1151868, at *3 (M.D. Ala. April 29, 2009) (Fuller, C.J.) (finding that the plaintiff's interest is not the value of the mortgage but rather his equity in the home); *Ingram v. Countrywide Home Loans*, No. 08-251 (M.D. Ala. July 14, 2008) (Walker, J.) (same).

In view of the diversity of opinion, this court ought to have rendered a more thorough analysis than the issue has been given thus far by any of the referenced courts, including this one in its first opinion.  Although Mapp's motion for reconsideration has been carefully considered, the initial ruling has not changed for the reasons stated below.

A.    <u>Calculating the Amount in Controversy</u>

      1.    ***The Value of Declaratory and Injunctive Relief***

As the parties are aware, when declaratory or injunctive relief is sought, "'it is well established that the amount in controversy is measured by the value of the object of the litigation.'"  *Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns & Elecs., Inc.*, 120 F.3d 216, 218 (11th Cir. 1997) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)).[3]  The Eleventh Circuit has paraphrased *Ericsson*'s holding this way:  "In other words, the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted."  *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000).  In the Eleventh Circuit, the value of the object of the litigation is measured solely from the plaintiff's perspective; the value to the defendant is irrelevant.  *See Ericsson*, 120 F.3d at 219-20.  The plaintiff's viewpoint rule, however, does not permit a plaintiff to set subjectively the value of the object of the litigation.  Rather, the cases upon which the *Ericsson* court relied emphasized that the relevant "value" is the value of the right that the plaintiff is seeking to enforce.  *See id.* (citing *Vraney v. County of*

_____

[3] The sole claim for relief in *Ericsson* was injunctive relief.

4

*Pinellas*, 250 F.2d 617 (5th Cir. 1958); *Alfonso v. Hillsborough County Aviation Auth.*, 308 F.2d 724 (5th Cir. 1962)).  Nor can the value include benefits that are "speculative and immeasurable."  *Id.* at 221-22.

### 2.    *Alabama Mortgage and Foreclosure Law*

A mortgage is at bottom a contract.[4]  It is a contract that secures payment of another contract, a promissory note.  In Alabama, a mortgage conveys fee simple title subject to a condition subsequent that, if the debt created by the promissory note is paid according to its terms, title will revert to the mortgagor.  *See Trauner v. Lowrey*, 369 So. 2d 531, 534 (Ala. 1979).  Although it is commonly referred to as a mortgage lien, technically, a mortgage in Alabama does not create a lien.  *Id.*  The mortgagor, having conveyed fee simple title to the mortgagee subject to a condition subsequent, retains an equity of redemption.  *Bailey Mortgage Co. v. Gobble-Fite Lumber Co.*, 565 So. 2d 138, 143 (Ala. 1990).

Like many other states, including Georgia, but not Florida,[5] Alabama allows nonjudicial foreclosure under a power of sale in the mortgage instrument.  Ala. Code §§ 35-10-1, *et seq*.  A foreclosure sale in Alabama is basically a public sale conducted by the agreement of the parties, that agreement being the power of sale contained in the mortgage instrument.  Nonjudicial foreclosure is the usual method of foreclosing on mortgages in

---

[4]  The complaint affirms the contractual nature of some of the claims: "The underlying action is based on a contract . . . .  The action is brought to enforce the contractual remedies allowed in paragraph 22 of the mortgage document."  (Compl. ¶ 4.)  Paragraphs 13 and 21 reference conditions precedent and paragraph 10 refers to the "security agreement that underlies [the] foreclosure action."  *Id.*

[5]  Florida is a judicial foreclosure jurisdiction.  *See* Fla. Stat. §§ 702.01–.10.

Alabama. *See* David E. Hudgens, *An Advanced Look at Alabama Real Estate Law* (2004 National Business Institute). A foreclosure sale terminates the mortgagor's equity of redemption and entitles the mortgagor to a statutory right of redemption. Ala. Code §§ 6-5-247 *et seq.*; 35-10-1, 5, 11h; *Dominex, Inc. v. Key*, 456 So. 2d 1047, 1052-53 (Ala. 1984). The purchaser at a foreclosure sale obtains fee simple determinable title, and the condition determinable on the title is the mortgagor's statutory right of redemption. *Dominex*, 456 So. 2d at 1057.

At a foreclosure sale, the property is always sold to the highest bidder for cash. "Because any excess must be paid to junior lien holders or the mortgagor, determining the appropriate bid price is important . . . ." Hudgens, *supra*, at 7. To protect its financial interests, a mortgagee will typically bid the lower of the mortgage debt or the appraised fair market value of the property. William L. Longshore III, *Real Property Foreclosure Procedures*, at 9 (National Business Institute 2004). If there are third-party bidders, the opening bid price will be made by the mortgagee. *Id.* The mortgagee owes the mortgagor the duty of conducting the sale in good faith and in a fair manner. *See Springer v. Baldwin County Fed. Sav. Bank*, 562 So. 2d 138, 139 (Ala. 1989). The sale price must not be so shockingly low or inadequate as to be unconscionable. *Mt. Carmel Estates, Inc. v. Regions Bank*, 853 So. 2d 160, 168 (Ala. 2002). The sale price is closely tied to fair market value to protect the mortgagor, junior mortgagees, and other lien holders. *See Austin Apparel, Inc. v. Bank of Prattville,* 872 So. 2d 158 (Ala. Civ. App. 2003). If the value of the property is

less than the mortgage balance, the recommended course is to bid the fair market value, not the mortgage balance, as the former allows recovery of the deficiency from the mortgagor after the foreclosure sale.  Longshore, *supra*, at 9.  In sum, it is the value of the property that feeds the foreclosure formula.

In a foreclosure sale, the condition subsequent is extinguished and title to the real estate is formally transferred.  The sale results in a foreclosure deed to the purchaser which is normally recorded in the probate office like any other deed.  The property sells at fair market value, not the "equity" claimed by the mortgagor.  The fair market value (such as it is in the foreclosure market) is paid for the property, and cash generated by the sale is transferred to the mortgagee to settle the promissory note debt and expenses of sale.  While this is frequently a transaction "on the books" of the mortgagee,[6] the financial aspect of a foreclosure sale is essentially like any other sale of real estate in that the proceeds are divided among various claimants.   The primary benefit flowing to the mortgagor is cancellation of the debt, at least up to the value of the real estate.  The only way the "equity" of the mortgagor is ever a factor is if the property sells for more than the accumulated debts and expenses associated with the mortgage, junior mortgagees and other lien holders.  Even then, the full purchase price changes hands after the sale, and the funds are allocated among the interested parties according to the contracts and law, with any "equity" going to the

---

[6] In most cases, the mortgagee will be buying the property at the foreclosure sale.  Longshore, *supra*, at 9.

mortgagor. Therefore, the enjoinder of a foreclosure sale prohibits a transaction involving the whole value of the property.[7]

"The most appropriate way to measure the value of th[e rights at stake when a foreclosure is at issue] is the value of the property itself." *Garland v. Mortgage Elec. Registration Sys., Inc*., Nos. 09-71, 09-72, 09-342, 09-430, 2009 WL 1684424, at *2 (D. Minn. June 16, 2009); *see id.* at *4 (finding that, in an action on the validity of a foreclosure, the "fundamental dispute . . . is about who owns the property"). This circuit has long recognized this principle. *See Frontera Transp. Co. v. Abauza,* 271 F. 199, 201 (5th Cir. 1921) (holding, in a suit to cancel a mortgage and remove the mortgage as a cloud on title, that "the value of the lands, not the amount required to redeem, is the amount in controversy").[8] Similarly, the Eleventh Circuit more recently held that, in an action for specific performance of a contract to purchase land, the fair market value of the property, and

---

[7] Stated differently, ownership of property is often referred to as a "bundle of rights," *NCNB Texas Nat'l Bank, N.A. v. West*, 631 So. 2d 212, 223 (Ala. 1993), and at least one of those rights, the right of peaceful possession and enjoyment of the property at stake, is implicated in actions alleging wrongful foreclosure. *See Gatter v. Cleland*, 87 F.R.D. 66, 69 (E.D. Pa. 1980) ("In this action, plaintiffs seek to enjoin the private lenders from foreclosing their mortgages. Thus, the property right sought to be protected is the right to peaceful possession and enjoyment of the homes, not merely the right to the equity owned therein.").

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit Court of Appeals that were handed down prior to the close of business on September 30, 1981. *Frontera* was cited in the prior opinion, but neither party has addressed it. (Doc. # 12, at 7.)

not the contract price, established the amount in controversy.  *Occidental Chem. Corp. v. Bullard*, 995 F.2d 1046, 1048 (11th Cir. 1993).[9]

### 3.  Application

In the instant case, Mapp seeks, among other requested relief including damages, to enjoin Defendants from foreclosing on his property.  (Compl. ¶ 4.)  Notwithstanding the fact that Alabama is a title theory state, *Bailey Mortgage Co. v. Gobble-Fite Lumber*, 565 So. 2d 138, 143 (Ala. 1990), and that the mortgagee therefore holds legal title to the property, the mortgagor, for all equitable and practical purposes, is deemed the "owner" of the property.  Thus, Mapp's ownership interest in the real property – and the value thereof – is at stake in this litigation.

---

[9] The same analysis holds for other areas of real estate law.  *Frontera* cited *Greenfield v. United States Mortgage Co. of Scotland, Ltd.*, 133 F. 784 (E.D. Ark. 1904), a case in which the court considered a motion to remand for a lack of the jurisdictional amount in controversy in an action to redeem after foreclosure.  The court held that the law of quieting title, proceedings to collect rent on premises that were the subject of a failed purchase agreement, and proceedings to set aside fraudulent conveyances were informative in the foreclosure arena when considering the amount in controversy:

> But the equitable as well as the legal considerations involved in the cause are to be considered.  The effect of the judgment is to adjust the legal and equitable claims of the parties to the subject of the suit.  The subject of the suit is not merely the amount of rent claimed, but the title of the respective parties to the land under the contract.
>
> . . . .
>
> For the purpose of determining the jurisdictional amount in a bill to quiet title, the whole value of the property, the possession or enjoyment of which is threatened by Defendant, is the measure of the value of the matters in controversy.
>
> . . . .
>
> In a proceeding to set aside certain conveyances as fraudulent and a cloud upon the plaintiff's title, the matter in dispute is the value of the land in controversy.

*Id.* at 788 (internal quotation marks and citations omitted).  *Greenfield* summed up the unifying principle: "This being an action involving the title to lands, and their value being in excess of the [jurisdictional amount], the necessary diversity of citizenship existing, it was properly removed, and the motion to remand must be overruled."  *Id.*

At least one of the bundle of property rights that Mapp is seeking to enforce or protect through this litigation is his right to peacefully possess and enjoy his home. *See Gatter*, 87 F.R.D. at 69. He is not seeking merely to delay Defendants' foreclosure action or to obtain the value of the equity in his home. Foreclosure will require him to vacate his home and will cost him its title. From Mapp's perspective, then, it is the whole title and its "bundle of rights" at issue. *NCNB Texas Nat'l Bank*, 631 So. 2d at 222.

To employ *Cohen*'s phraseology, if the injunction were permanently granted, the benefits obtained by Mapp would be the right to retain ownership of and title to his home, as well as the right to occupy the home. *See* 204 F.3d at 1077. Ownership, title and possession, thus, are not only the objects of this lawsuit, *see Hunt*, 432 U.S. at 347, but similarly represent the value of the rights sought to be protected by an injunction enjoining the foreclosure, *see Ericsson*, 120 F.3d at 347. In monetary terms, these benefits, objects and rights are best measured by the value of the home itself.

To determine whether the value of Mapp's property meets the jurisdictional amount, the court is limited to examining Defendants' removal documents. *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1213-14 (11th Cir. 2007). Removal documents include contracts underlying the causes of action. *Id.* at 1214 n.66. If the initial complaint and the notice of removal do not "unambiguously establish federal jurisdiction," *id.* at 1213, "neither the defendants nor the court may speculate in an attempt to make up for the notice's failings," *id.* at 1214-15 (citation omitted). Therefore, the determination is a rather simple process:

"If the jurisdictional amount is either stated clearly on the face of the documents before the court, or readily deducible from them, then the court has jurisdiction.  If not, the court must remand."  *Id.* at 1211.

The removal documents consist of the Notice of Removal, the state court complaint, and the note and mortgage at issue between the parties.  The latter two documents are contracts that establish the fair market value of Mapp's property interest, which undisputedly exceeds the jurisdictional amount.  Because jurisdiction was evident from the removal documents, the motion to remand was denied.[10]

Therefore, in sum, the case is removable when viewed from a real property perspective or a contract perspective.  And not to be overlooked here is that there is more freight on the dock that just an injunction.  Mapp repeatedly alleges that Defendants lack standing to foreclose (Compl. ¶¶ 10, 23, 50) and that the assignment between non-party Bank of America and Deutsche Bank is "defective, void, or otherwise unenforceable" (Compl. ¶ 12), or "void, voidable, illegal, without legal effect and is otherwise invalid and unenforceable as a matter of law."  (Compl. ¶ 24).  Moreover, Mapp claims in a separate paragraph of the complaint that "the foreclosing entity lacks standing to pursue foreclosure . . . and that to allow it to foreclose could cause the petitioner to lose his home without being relieved of his contractual obligation on the debt." (Compl. ¶ 50.) Obviously, Mapp has pled

---

[10]  Ordinarily, important state law issues should be decided by state courts.  Neither party specifically briefed this point.  On balance, the law of amount in controversy with respect to title to real estate and contracts is sufficiently clear to satisfy the removal standard and to overcome abstention concerns.

the whole debt into issue, and he cannot now complain that the action is freighted with his own load of allegations. Injunctive relief hardly establishes the amount in controversy when so many substantive issues are in play. Accordingly, the court finds that Mapp's motion for reconsideration is due to be denied.

### B.   Interlocutory Appeal

Nevertheless, this case meets the requirements of 28 U.S.C. § 1292(b). Because federal courts in Alabama, indeed within this district, disagree on how to measure the value of the object of the litigation when foreclosure is involved, the court finds that this "order involves a controlling question of law as to which there is a substantial ground for difference of opinion" on how to view the amount in controversy. § 1292(b). The court further finds that "an immediate appeal from th[is] order may materially advance the ultimate termination of the litigation[.]" *Id.* The court, therefore, finds that Mapp's motion for certification is due to be granted.

### IV.  CONCLUSION

Accordingly, it is ORDERED that Mapp's motion for reconsideration (Doc. # 20) is DENIED.

It is further ORDERED that Mapp's motion for certification of this interlocutory order as appealable (Doc. # 20) is GRANTED.

DONE this 28th day of October, 2009.

　　　　　　　　　　/s/  W.  Keith Watkins
　　　　　　　UNITED STATES DISTRICT JUDGE

12